**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Civil Action Number:

ANDRES GOMEZ, On His Own Behalf, and On
Behalf of All Other Individuals Similarly Situated

      Plaintiffs,
vs.

STEVEN MADDEN, LTD.

      Defendant

---

**COMPLAINT – CLASS ACTION**

---

COMES NOW Plaintiff Andres Gomez, on his own behalf and on behalf of all Other Individuals Similarly Situated, by and through their undersigned counsel, hereby sue Defendant Steven Madden, Ltd. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12181-12189 ("ADA"), 28 C.F.R. Part 36 and allege as follows:

**INTRODUCTORY STATEMENT**

1. Plaintiffs bring this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Steven Madden, Ltd.'s website which is an extension of its Steve Madden (brand) retail stores throughout the United States of America where the law of the American with Disabilities Act has been the law of the land for over twenty-six years.

1

2. Defendant Steven Madden, Ltd. owns and operates places of public accommodation which are upscale specialty retail stores under the brand name "Steve Madden." Steve Madden stores offer for sale to the general public exclusively Steve Madden brand men's, women's, and children's shoes as well as Steve Madden accessories such as handbags, jewelry, hats and scarves, active wear, legwear, umbrellas, and sunglass/eyewear (also referenced throughout as "Steve Madden merchandise").

3. The Defendant offers an adjunct website www.stevemadden.com ("website") which is directly connected to its Steve Madden stores since the website provides a site locator to the Defendant's Steve Madden physical store locations (places of public accommodation). Thus, www.stevemadden.com ("website") has a true nexus to the Defendant's Steve Madden retail stores.

4. This case arises out the fact that Defendant Steven Madden, Ltd. has operated its business in a manner and way that completely excludes individuals with disabilities who are visually impaired from enjoying and visiting its place of public accommodation, namely the Defendant's website www.stevemadden.com.

5. This is an action to put an end to civil rights violations committed by Defendant Steven Madden, Ltd. against individuals with disabilities who are visually impaired and who cannot access and comprehend the internet and the websites that operate therein without the aid of assistive technology.

**JURISDICTION & VENUE**

6. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, and 28 C.F.R. § 36.201.

7.      This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services to order mattresses online.

8.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendants reside in this District, the Defendants transact business in this District, and the acts constituting the violation of the ADA occurred in this District.

9.      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

**Andres Gomez**

10.     Plaintiff Andres Gomez ("Plaintiff Gomez") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

11.     Plaintiff Gomez suffers from what constitutes a "qualified disability" under the ADA. Plaintiff Gomez is legally blind, and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing his world, adequately traversing obstacles and walking without assistance. The Plaintiff's disability is defined in 42 U.S.C. §12012 (1)(A) and in 42 U.S.C. 3602, §802(h).

**Other Plaintiffs Similarly Situated**

12.     Other plaintiffs similarly situated to Plaintiff are qualified individuals with disabilities under, and as defined by, the ADA.

13.     Other plaintiffs are also similarly situated to Plaintiff by virtue of the fact that they are disabled with visual impairments and require screen reader software (which

is commercially available) in order to comprehend the Defendant Steven Madden, Ltd.'s website to become informed of Steve Madden physical store locations and the Defendant's inventory of Steve Madden merchandise.

**Steven Madden, Ltd.**

14.     Defendant Steven Madden, Ltd. (also referenced as Defendant) is the owner and operator of a chain of retail specialty stores which sells merchandise under the brand name "Steve Madden."  Steve Madden brand merchandise is sold through the Defendant's own specialty stores named Steve Madden (see ¶2 for definition of "Steve Madden merchandise").  The Defendant's Steve Madden brand merchandise is also sold in numerous department and specialty stores worldwide.  As such, Defendant Steven Madden, Ltd. is authorized to conduct, and is conducting, business within the State of Florida and within the jurisdiction of this court.

15.     At all times material hereto, the Defendant  was (and is) an entity owning and operating a chain of retail shoes and clothing which are open to the public.

## FACTS

16.     The Defendant is defined as a "public accommodation" because it is an entity which owns and operates a chain of retail specialty stores under the brand "Steve Madden" each of which is a "Place of Public Accommodation," 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104. (2) or "[P]laces of public accommodation," "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment." Each of the Defendant's Steve Madden retail stores are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E) and 28 C.F.R. Part 36. The Defendant's

Steve Madden stores are also reference throughout as "place(s) of public accommodation," or "Steve Madden stores."

17. The Defendant's website www.stevemadden.com ("website") is offered to provide the general public information including but not limited to information on the various locations of the Defendant's Steven Madden stores within the state of Florida and throughout the United States and the world.

18. Since the Defendant's website allows the general public the ability to locate one of the many Steve Madden physical store locations, the website is an extension of the physical Steve Madden stores. Therefore, the website has a direct nexus between the website and the Defendant's Steve Madden stores, hence the website is also characterized as a place of public accommodation (42 U.S.C. §§S 12181(7)(E)).

19. The website also allows the general public access to purchase online a wide range of Steve Madden brand men's, women's, and children's shoes as well as Steve Madden accessories such as handbags, jewelry, hats and scarves, active wear, legwear, umbrellas, and sunglass/eyewear (Steve Madden merchandise). As such, the website is a sales establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(E), and must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public. As such, the Defendant has subjected itself and the website it has created and maintains, to the Americans with Disabilities Act ("ADA").[1]

---

[1] *"The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by*

5

20. Plaintiff Gomez is a customer who is interested in purchasing items such as men's shoes, jewelry, hats and scarves, active wear, legwear, umbrellas, and sunglass/eyewear, all of which such items are offered through the Defendant's Steve Madden stores and through its website .

21. Plaintiff Gomez frequently utilizes the internet. In order to comprehend information available on the internet and access/comprehend websites, Plaintiff Gomez uses commercially available screen reader software to interface with the various websites.

22. In order to comprehend the Defendant's website (¶3) and to become informed of the Defendant's Steve Madden merchandise (which other plaintiffs may order online), Plaintiff Gomez must use screen reader software.

23. On April 4, 2016, the Plaintiff attempted to utilize the Defendant's website to browse through the merchandise with the intent of making a purchase. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which is the most popular screen reader software utilized worldwide as it allows individuals who are visually impaired to comprehend information available on the internet and access websites.

24. However, the Defendant's website did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means.

25. Plaintiff Gomez continues to desire to patronize the Defendant's website, but is unable to do so as he is unable to comprehend the Defendant's website, thus he will

---

*law to ensure that their sites are fully accessible to individuals with disabilities*." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

continue to suffer irreparable injury from the Defendant's intentional acts, policies, and practices set forth herein unless enjoined by this Court.

26. The Defendant's website did\does not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner.

27. The Defendant's website is\was not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

28. The Defendant's website is\was so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

29. On information and belief, the Defendant has not designated an employee as a Web Accessibility Policy to insure full and equal use of its website by individuals with disabilities.

30. On information and belief, the Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

31. On information and belief, the Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of its website by individuals with disabilities.

32. On information and belief, the Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

33. On information and belief, the Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

34. On information and belief, the Defendant has not instituted a Bug Fix Priority Policy.

35. On information and belief, the Defendant has not instituted an Automated Web Accessibility Testing program.

36. On information and belief, the Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

37. On information and belief, the Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its website, Applications, and Digital Assets accessible to the visually impaired community.

38. On information and belief, Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[2]

---

[2] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

8

39. Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its website www.stevemadden.com.

40. Under the ADA, all places of public accommodation must ensure that the disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modifications to its services and sales policies and procedures.

41. Public Accommodations that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

42. For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the Defendant's website.

43. On information and belief, the Defendant is aware of these common access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend its website to become informed of the Steve Madden merchandise available for purchase online and within the Defendant's various physical Steve Madden store locations.

44. Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

9

45. Such barriers result in punishment and isolation of blind and low vision from the rest of society.

46. Thus, the Defendant has refused to make its website accessible to individuals with disabilities who are visually impaired.

47. Enforcement of the Plaintiff's rights is right and just pursuant to 28 U.S.C. §§2201, 2202.

48. The Plaintiff has retained the law offices of Scott R. Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## CLASS ACTION ALLEGATIONS

49. Plaintiff Gomez brings this case as a class action pursuant to Federal Rule of Civil Procedure Rule 23, in that the class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class [F.R.C.P. Rule 23(a)(1)], the claims and defenses of the representative party is typical of those of the class [F.R.C.P. Rule 23(a)(3)], and Plaintiff Gomez (as the representative party) will fairly and adequately protect the interests of the class [F.R.C.P Rule 23(a)(4)].

50. The Defendant owns and/or operates over one hundred Steve Madden stores throughout the United States and one hundred eighty-five Steve Madden stores in fifty-five countries around the world.  Steve Madden brand merchandise is sold in numerous department and specialty stores worldwide. The Defendant's website www.stevemadden.com services the various Steve Madden store locations represented by its physical stand-alone store locations and supports Steve Madden brand merchandise sold through department and specialty stores.

51.     According to Statistic Brain Research Institute[3], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores such as Steven Madden have made an internet purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

52.     According to the National Federation for the Blind[4], there are 6,670,300 Americans with visual disabilities, and 434,600 within the state of Florida.

53.     Thus, the Class of Others Similarly Situated to Plaintiff Gomez which is to be represented by Plaintiff Gomez is so numerous (6,670,300 visually impaired Americans throughout the United States and 434,600 in the state of Florida) that a joinder of each individual member is impracticable; F.R.C.P. Rule 23(a)(1).

54.     Plaintiff Gomez is a representative of the Class due to the fact that he suffers from a qualified disability, he is visually impaired and he requires screen reader software interface in order to comprehend and effectively communicate with public accommodations on the internet, such as the Defendant's website.

55.     The questions of law and fact relating to the representative Plaintiff are similar and common to the law and fact questions which would be raised by other members of the Class if they were individually named plaintiffs herein.

56.     Similarly, the claims and defenses to be raised by and against the parties herein are typical of the claims or defenses which would be raised by the members of the Class if they were a party to this action.

---

[3] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/
[4] Statistics for 2012, see http://www.NFB.org/blindness-statistics

57. The Plaintiff seeks injunctive relief for the implementation of the relief provide by the ADA which is the same relief which would be sought by each class member if he or she brought a claim individually. Accordingly, Plaintiff Gomez (as the representative party for the Class) will fairly and adequately protect the interests of the Class.

58. The relief sought herein is for the benefit of all members of the Class and consistent injunctive relief should be provided for each member of the Class.

59. Prosecution of this matter by individual members of the Class would only create a risk of inconsistent and varying adjudications and the establishment of incompatible standard by defendant and adjudication which may be dispositive of the interest of the other Class members.

60. The questions of law and fact common to the members of the Class, such as the degree of non-compliance, which will be raised and adjudicated herein, predominate over any questions affecting only the individual Plaintiff or individual members of the Class. As a result, this class action is the optimal method for reaching a fair and efficient adjudication of the controversy raised herein.

61. The Defendant has discriminated against Plaintiff Gomez and the members of the Class by denying effective communication through its website.

62. The Defendant has failed to provide any mechanism by which to adequately serve visually impaired individuals such as Plaintiff Gomez and others similarly situated. The Defendant is operating in violation of Plaintiffs' rights as protected by the ADA and is entitled to injunctive relief. 42 U.S.C. §12188.

63. Plaintiff Gomez and others similarly situated have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from the Defendant's unlawful and discriminatory practices.

64. Plaintiff Gomez and others similarly situated will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

65. Notice to the Defendants is not required as a result of the Defendant's failure to cure the violations.

### COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

66. Plaintiff Gomez and others similarly situated re-allege and incorporate by reference the allegations set forth in ¶¶s 1-65 above

144. The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[5].

145. As a result of the inaccessibility of the Defendant's website and by the barriers to access in its website (when removal of those barriers is readily achievable), the Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendant has made available

---

[5] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

to the general public in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

146.    Pursuant to 42 U.S.C. §12181(7)(E), the Defendant's website is a *place of public accommodation* under the ADA because it serves to (i) augment its chain of Steve Madden stores, (ii) to educate the general public as to the line of Steve Madden merchandise available in department and specialty stores, and (iii) to provide the general public with the ability to purchase Steve Madden merchandise online.

147.    As such, the Defendant's website must be in compliance with the ADA. However, the Defendant's website is\was not in compliance with the ADA. Plaintiff Gomez and others similarly situated have suffered an injury in fact because of the website's (and Defendant's) non-compliance with the ADA.

148.    Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which prone to making the website inaccessible.

67.    A sampling review of just part of the Defendant's website revealed that the website is not functional for users who are visually impaired. The Defendant's website contains several types of PETs (easily identifiable and correctable), which occur on throughout the website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

68.    Further, the Defendant's website contains various types of PATs (prone to making the website inaccessible), which occur throughout the website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

149. More violations may be present on other pages of the website, and they will be determined and proven through the discovery process.

150. Further, the Defendant's website did\does not offer include the universal symbol for the disabled[6] which would permit disabled individuals to access the website's accessibility information and accessibility facts.

151. Therefore, due to the Plaintiff's disability and the Defendant's failure to have the website adequately accessible to individuals with visual impairments, the Plaintiff was unable to comprehend the Defendant's website.

152. The Defendant has violated the ADA (and continues to violate the ADA) by denying access to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations are ongoing.

153. As a result of the Defendant's inadequate development and administration of its website, Plaintiff Gomez and others similarly situated are entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

154. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Gomez and others similarly situated injunctive relief; including an order to:

---

[6] 

a) Require Defendant Steven Madden, Ltd.to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of www.stevemadden.com to a statement as to its policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and

b) Require Defendant Steven Madden, Ltd.to cease and desist discriminatory practices and if necessary to cease and desist operations of the website known as www.stevemadden.com until the requisite modifications are made such that its website becomes equally accessible to persons with disabilities.

155.   Plaintiff Gomez has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  The Plaintiff and others similarly situated are entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Steven Madden, Ltd.

WHEREFORE, Plaintiff Andres on his own behalf and on behalf of all other Individuals Others Similarly Situated hereby demand judgment against Defendant Steven Madden, Ltd. and request the following injunctive and declaratory relief:

a)   The Court issue a declaratory judgment that Defendant Steven Madden, Ltd. has violated the Plaintiff's rights as guaranteed by the ADA;

b)   The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting Defendant Steven Madden, Ltd. from operating its

        website www.stevemadden.com without adequate accommodation for the visually impaired community;

c)     The Court enter an Order requiring Defendant Steven Madden, Ltd. to update website to remove barriers in order that individuals with visual disabilities can access the website to the full extent required by the Title III of the ADA;

d)     The Court enter an Order requiring Defendant Steven Madden, Ltd. to clearly display the universal disabled logo[7] within its website, wherein the logo would lead to a page which would state Steven Madden, Ltd.'s accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of website www.stevemadden.com;

e)     The Court enter an order requiring Defendant Steven Madden, Ltd. to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f)     The Court enter an Order directing Defendant Steven Madden, Ltd. to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to

---

[7] 

undertake and complete corrective procedures to website known as www.stevemadden.com;

g) The Court award reasonable attorney's fees, compensatory damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to the Plaintiff; and

h) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 29th day of April, 2016.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*